Morris E. Spector, J.
Article 78 proceedings designated Nos. 39, 40, 41 and 42 on the motion calendar of August 27, 1974 are *349 consolidated for the purposes of disposition and decided as indicated hereinbelow.
The proceeding designated No. 39 is brought individually by the petitioner as the owner and landlord of the premises at 140 Bast 46th Street in New York City, seeking the revocation of a corrected maximum base rent order which had reduced rent increases previously approved under the “ Maximum Base Bent Law ” (Local Laws, 1970, No. 30 of City of New York) for apartments in said premises.
The proceeding designated No. 42 is brought individually by the same petitioner as the owner and landlord of the premises at 205 East 78th Street in New York City seeking similar relief with respect to the subject premises.
The proceeding designated No. 40 seeks a stay of any requirement to make retroactive rent refunds by reason of the reductions provided for in the corrected MBB orders.
The proceeding designated No. 41 is brought by Plaza Management Co. on behalf of itself as owner of the two aforesaid buildings which are subject to maximum base rent regulations and orders and all other owners similarly situated. The petitioner is seeking to annul the determination by the Commissioner of Bent and Housing Maintenance as contained in his order and opinion denying this petitioner’s protest as to specified portions of the City Bent, Eviction and Behabilitation Begulations as interpreted by the commissioner. That interpretation provided an area must contain at least 59 square feet to be considered a kitchen and thereby included as a room in the room count for the petitioner’s apartments.
On July 10, 1970, the City of New York amended the city rent law by the adoption of Local Law No. 30 which provided for the establishment of maximum rents to be effective on January 1, 1972, giving consideration to factors prescribed by a formula which included the number of rooms in a particular housing unit. In order to assist in the implementation of this system section Y51-5.0 (subd. a, par. [2], cl. [e]) of the Administrative Code of the City of New York provided for interim rent adjustments to be based upon the landlord’s filing a report with the Housing and Development Administration upon forms prescribed by the administration. Between August 1,1970, and November 1, 1970, the petitioner filed reports designated by the Department of Bent and Housing Maintenance as A-23 and B-23 as prescribed in subdivision g of section 23 of the regulations for compensatory lease adjustment. Form A-23 required the landlord to indicate with respect to each subject apartment the number of rooms and *350 whether or not the particular apartment contained a ‘1 kitchen ’ ’ or a “ kitchenette.” On the reverse side of form A-23 under the heading “ Part V — Interpretations and Definitions” the basis for computing the number of rooms was interpreted and defined as follows:
“ Room Count — The room count shall not include bathroom, foyer, windowless room and shall be limited to living* room, kitchen (other than an enclosed kitchenette or an area in the living room which is either recessed or semi-enclosed), dining room (other than dinette or dining alcove) and bedrooms.”
Based on that interpretation and definition the petitioner . found each of its 221 apartments to have contained a kitchen and each such kitchen was recorded as a room on the said A-23 forms.
On March 5, 1971, by Amendment No. 30, under subdivision i of section 23 of the Regulations of the Housing and Development Administration, a “kitchen (other than an enclosed kitchenette or an area in the living room which is either recessed or 'Semi-enclosed) ” was specifically included in the definition of “ room.” Thereafter, on January 1, 1972, the respondent by Amendment No. 33 added section 24 to its regulations for implementation of the Maximum Base Rent System, which, in paragraph (2). of subdivision a of section 24 prescribed that, “ Except as otherwise provided, the application of this section shall be based upon the reports submitted pursuant to Sections 23 and 49 of these Regulations ”. Thus, the data supplied by the landlords for computing the interim rent increase were to be utilized in part as a basis of the computations necessary for issuing the MBR orders.
It is the respondent’s attempt to define a kitchen as requiring at least 59 square feet which gave rise to this proceeding. Local Law No. 30 which provided for the establishment of the Maximum Base Rent System was general in nature and did not define what constituted a room. On March 5, 1971, as aforesaid, Amendment No. 30 to the regulations provided for a kitchen to be included as a room but it did not further define kitchen or provide a basis for distinguishing a kitchen from a kitchenette. Although there is a disagreement between the parties as to when the respondent first adopted the “ 59 square feet ” definition of what constitutes a kitchen, it seems clear from the record that such determination was first adopted subsequent to July 2, 1971. Until such time there was nothing to indicate that the cooking areas in the petitioner’s apartments would not be considered as kitchens and thereby not included in the room count.
*351 Since the determination adopting the more limited and restrictive definition of a kitchen had the same effect as a rule or regulation and there is no evidence of its having been submitted to or approved by the State Commissioner of Housing and Community Renewal, it is violative of chapter 1012 of the Laws of 1971, effective July 2, 1971, which provided (in its last sentence) as follows: “No housing accommodations presently subject to regulation and control pursuant to local laws or ordinances adopted or amended under authority of this subdivision shall hereafter be by local law or ordinance or by rule or regulation which has not been theretofore approved by the state commissioner of housing and community renewal subjected to more stringent or restrictive provisions of regulation and control than those presently in effect. ’ ’
Accordingly, the rule by the respondent that a cooking area to be considered a kitchen must have at least 59 square feet, and the order and opinion by the commissioner, dated April 16, 1974, upholding that ruling and denying petitioner’s protests, are contrary to law.
This ruling by the respondent is contrary to law for the added reason that it was apparently applied and implemented without affording an opportunity to interested persons to comment in writing thereon by having notified them through publication, as required by the New York City Charter (ch. 49, § 1105, subd. b).
Based upon the information supplied by the petitioner and without application of the 59-square foot rule, the respondent issued an order fixing the maximum base rent for certain of the petitioner’s apartments, which had the effect of providing for an increase in rent. In response, the tenants affected by the increase filed a protest with the respondent ex parte and without notice to the petitioner. Upon deciding this protest in favor of the tenants, the respondent issued the aforesaid corrected MBR orders which had the effect of retroactively reducing the maximum base rent for certain of petitioner’s apartments by application of the 11 59-square foot rule. ’ ’ This rule caused the cooking area in certain apartments not to be considered kitchens, and therefore, not includable in the room count.
The source of the “ 59-square foot ” definition is section 33 of the Multiple Dwelling Law, as amended by chapter 173 of the Laws of 1952, effective March 25, 1952. This amendment was not intended to apply retroactively to buildings constructed prior to its effective date. It therefore has no application to rent-controlled buildings all of which were constructed prior to February 2, 1947. Although there does not appear to be any *352 question that the cooking areas in the buildings affected by the contested MBR regulations were legal when constructed, and may continue to be used as cooking areas, the application of the “ 59-square foot ” standard in computing the room count of these buildings is arbitrary, since it is an all-or-nothing test. If a cooking area does not contain 59 square feet, then it would not be counted as a kitchen, and therefore, not as a room. As indicated above, the nonrecognition of a room would have an effect on computation of the maximum base rent for the particular apartment. Clearly, an apartment containing a cooking area with a sink, refrigerator and stove is worth more than one without such facilities. Moreover, the objectionable 59-square foot standard is arbitrary in that, while it would give credit for a large ‘ ‘ eat-in ’ ’ kitchen, it would wholly exclude the often more desirable kitchen of less than 59 square feet with adjoining dinette.
The fact that the respondent, and its commissioner in his order and opinion denying protests, can point to the Multiple Dwelling Law and the Housing Maintenance Code of the New York City Administrative Code (■§ D26-1.07) as the origin of its 59-square foot ruling does not make rational its arbitrary adoption and application of this standard to buildings to which the standard was never intended to apply.
In reaching this decision the court is cognizant of the severe housing crisis which exists in New York City, especially in view of the deterioration of its housing stock. In the introduction to the pamphlet prepared and distributed by the City of New York, Housing and Development Administration, entitled “ The Maximum Base Rents Formula a cost index approach to controlled rents ”, it is stated that “ The new law will result in increased building revenues for landlords who comply with City housing code standards.” In light of the indicated intent of the MBR law, the application of the ‘ ‘ 59-square foot ’ ’ rule to exclude from room count cooking areas which complied with the housing code standards in effect at the time they were constructed (and therefore remain in compliance) is clearly another indication of the arbitrariness of this rule.
Accordingly, the article 78 proceeding designated No. 41 on the motion calendar of August 27, 1974, is granted to the extent that the petitioner individually as the owner of the premises indicated in the caption may have judgment setting aside sections 28, 24 and 26 of the respondent’s regulations to the extent that such regulations authorize the ruling or determination that a kitchen must contain at least 59 square feet to *353 constitute a room in the room count used for computing the maximum base rent. This decision is rendered with respect to the petitioner, individually and ,not as the representative of a class, since the attempted institution of this proceeding as a class action fails to meet the requirements set forth by the Court of Appeals in Hall v. Coburn Corp. of Amer. (26 N Y 2d 396).
The article 78 proceeding designated Ho. 39 on the motion calendar of August 27,1974, applicable to the premises located at 140 East 46th Street, is granted 'to the extent that the corrected MBR order of February 25, 1974, to the extent that it is based upon the “59-square foot” definition of a kitchen is vacated retroactively to January 1, 1972, and the determination of the maximum base rents for the apartments affected thereby is remanded to the respondent for further proceedings not inconsistent with this decision. Upon the setting aside of the 59-square foot rule, the corrected orders based thereon cannot stand.
The article 78 proceeding designated Ho. 42 on the motion calendar of August 27, 1974, applicable to the premises located at 205 East 78th Street is granted to the extent that the corrected MBR order of February 11, 1974, to the extent that it is based upon the “59-square foot” definition of a kitchen is vacated retroactively to January 1, 1972, and the determination of the maximum base rents for the apartments affected thereby is remanded to the respondent for further proceedings not inconsistent with this decision.
The article 78 proceeding designated Ho. 40 on the motion calendar of August 27, 1974, seeking a stay of the retroactive refund requirement provided by the corrected MBR orders hereinabove vacated, is denied as having been rendered moot.